UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------
EMMANUEL G.,

                Plaintiff,        <u>DECISION AND ORDER</u>
                                        1:22-cv-06497-GRJ

     v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
-----------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In November of 2016, Plaintiff Emmanuel G.[1] applied for Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by The Legal Aid Society, Carol Santangelo, Esq. and Violeta Arciniega, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 27).

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

This case was referred to the undersigned on January 5, 2024.  For the following reasons, the Commissioner's decision is due to be reversed and this matter is remanded for further proceedings.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on November 3, 2016, alleging disability beginning August 1, 2015. (T at 220).[2]  Plaintiff's application was denied initially and on reconsideration.  He requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on November 2, 2018, before ALJ Seth Grossman. (T at 60-117).

On May 19, 2019, ALJ Grossman issued a decision denying the application for benefits. (T at 7-16).  The Appeals Council denied Plaintiff's request for review on June 26, 2020. (T at 1-6).

Plaintiff commenced an action in this District seeking judicial review of the denial of benefits.  On February 26, 2021, the Honorable Katharine M. Parker, United States Magistrate Judge, entered an order remanding the matter for further administrative proceedings by stipulation of the parties. (T at 1202-1203).  The Appeals Council issued a remand order on May 19, 2021. (T at 1215-19).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 22.

A further administrative hearing was held before ALJ Grossman on March 3, 2022. (T at 1099-1171).  Plaintiff appeared with an attorney and testified. (T at 1110-1113, 1143-44, 1163-70).  The ALJ received testimony from Dr. Joseph Gaeta (T at 1104-1109, 1114-43, 1145-51), a medical expert, and Jerome Volstra, a vocational expert. (T at 1153-61).

While the above proceedings were pending, Plaintiff filed two new applications for benefits, which were approved.  Plaintiff began receiving SSI benefits in October of 2020. (T at 1229, 1240).

Accordingly, the instant matter involves a claim for a closed period of benefits beginning November 3, 2016, and ending July 6, 2020.

B.    ALJ's Decision

On April 4, 2022, ALJ Grossman issued a second decision denying the application for benefits. (T at 1084-92).  The ALJ found that Plaintiff did not engage in substantial gainful activity between November 3, 2016 (the application date) and July 5, 2020 (the "closed period"). (T at 1086).

The ALJ concluded that Plaintiff's history of congestive heart failure was a severe impairment as defined under the Social Security Act during the closed period. (T at 1086).  However, the ALJ found that, during the closed period, Plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 1087).

At step four of the sequential analysis the ALJ determined that, during the closed period, Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR 416.967 (b), provided he was not required to crawl or perform more than occasional crouching, stooping, or bending. (T at 1087).

The ALJ concluded that, during the closed period, Plaintiff could perform his past relevant work as a security guard. (T at 1091).

As such, the ALJ found that Plaintiff was not under a disability, as defined under the Social Security Act, and was not entitled to benefits with respect to the closed period at issue. (T at 1091).  ALJ Grossman's second decision is considered the Commissioner's final decision.

### C. Procedural History

Plaintiff commenced this action, by and through his counsel, by filing a Complaint on August 1, 2022. (Docket No. 1).  The parties, through counsel, submitted a Joint Stipulation in lieu of motions for judgment on the pleadings on April 21, 2023. (Docket No. 26).

## II.  APPLICABLE LAW

*A.     Standard of Review*

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without

considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises three main arguments in support of his request for reversal of the ALJ's decision.  First, he challenges the ALJ's assessment of the medical opinion evidence.  Second, Plaintiff argues that the ALJ did not give appropriate weight to his subjective complaints.  Third, he

contends that the ALJ's step four determination regarding his past relevant work is not supported by substantial evidence.  This Court will address each argument in turn.

A.    Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).[3]

A "treating physician" is the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant] ... with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

Treating physician opinions are considered particularly probative because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be

---

[3] In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence.  The revised regulations apply to claims filed on or after March 27, 2017.  See 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits before that date, the new regulations do not apply here.

obtained from the objective medical evidence alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).

An opinion from a treating physician is afforded controlling weight as to the nature and severity of an impairment, provided the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(d)(2).

To determine how much weight a treating physician's opinion should be given, the ALJ considers the "*Burgess* factors" identified by the Second Circuit: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019)(following *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

The *Burgess* factors are also applied to the opinions of non-treating physicians, "with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant." *McGinley v. Berryhill*, No. 17 Civ. 2182, 2018 WL 4212037, at *12 (S.D.N.Y. July 30, 2018).  A consultative

physician's opinion may constitute substantial evidence. *See Petrie v. Astrue*, 412 F. Appx 401, 406 (2d Cir. 2011).

When the record contains competing medical opinions, it is the role of the Commissioner, and not this Court, to resolve such conflicts. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). The ALJ may reach a determination that "does not perfectly correspond with any of the opinions of medical sources," provided the ALJ's overall assessment is supported by substantial evidence and consistent with applicable law. *See Trepanier v. Comm'r of SSA*, 752 Fed. Appx. 75, 79 (2d Cir. 2018).

However, it is "well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . . While an [ALJ] is free to … choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)(quoting *McBrayer v. Secretary of Health and Human Servs*., 712 F.2d 795, 799 (2d Cir. 1983) (alterations in original).

In the present case, the record contains an opinion from Dr. Mahmood Karimi, Plaintiff's primary care physician. In March of 2017, Dr. Karimi completed a medical source statement of ability to do work-related

activities (physical) form.  He stated that he had been treating Plaintiff 2-3 times per year since August of 2006. (T at 416).  Dr. Karimi opined that Plaintiff could frequently lift/carry 10 pounds and occasionally lift/carry up to 20 pounds. (T at 419).  He believed Plaintiff could sit, stand, and walk for up to 2 hours in an 8-hour workday. (T at 420).

Dr. Karimi stated that Plaintiff could perform occasional reaching, handling, fingering, and pushing/pulling with his hands bilaterally.  (T at 421).  He opined that Plaintiff was limited to occasional climbing of stairs, ramps, ladders, or scaffolds, with occasional balancing, stooping, kneeling, crouching, and crawling. (T at 422).  He further stated that Plaintiff could not operate a motor vehicle or be exposed to dust, odors, and pulmonary irritants. (T at 423).

The ALJ assigned "only some weight" to Dr. Karimi's opinion, concluding that it significantly overstated Plaintiff's limitations with respect to sitting, standing, and walking during the time period at issue. (T at 1090).

Plaintiff challenges the ALJ's decision to discount Dr. Karimi's opinion.  For the reasons that follow, the Court concludes that this aspect of the ALJ's decision is supported by substantial evidence and is consistent with applicable law.

First, the ALJ reasonably concluded that the significant limitations assessed by Dr. Karimi were not consistent with the treatment notes from the relevant time period, which documented generally unremarkable examination findings. (T at 1088-90, 312-13, 441-56, 1470-71, 1483, 1498).

An ALJ may discount a medical opinion that is "internally inconsistent with [the physician's] own, contemporaneous examination findings." *Donofrio v. Saul*, No. 18 Civ. 9968, 2020 U.S. Dist. LEXIS 54407, at *25 (S.D.N.Y. Mar. 27, 2020); *see also Calero v. Colvin*, No. 16 Civ. 6582, 2017 U.S. Dist. LEXIS 157262, at *17-18 (S.D.N.Y. Sep. 26, 2017)("The ALJ need not fully credit the evaluations of every treating or consulting physician. Grounds for an ALJ to give limited weight to a physician's conclusions include: inconsistencies with the rest of the administrative record and internal inconsistencies.").

Second, the ALJ also reasonably found Dr. Karimi's restrictive opinion inconsistent with other medical opinion evidence of record.

Dr. Ram Ravi performed a consultative examination in December of 2016.  His examination revealed generally unremarkable musculoskeletal and neurologic findings, with no sensory deficit or muscle atrophy and full strength in the upper and lower extremities. (T at 303). Dr. Ravi assessed

no limitation as to Plaintiff's ability to sit, stand, or bend, with mild limitation with respect to walking, pushing, pulling, lifting, and carrying. (T at 304).

Dr. Alan Meisel conducted a consultative examination in July of 2018. Dr. Meisel documented generally unremarkable musculoskeletal and neurologic findings, with no sensory deficit or muscle atrophy and full strength in the upper and lower extremities. (T at 369). He opined that Plaintiff had marked limitations for heavy lifting and carrying; should avoid activities that are mildly or moderately strenuous; had mild limitation with respect to standing, walking, climbing stairs, bending, and kneeling; and had marked impairment as to climbing ladders and scaffolds, being exposed to unprotected heights, and operating a motor vehicle. (T at 370).

Dr. Meisel believed Plaintiff could lift/carry up to 20 pounds continuously, but never more than that. (T at 371). He opined that Plaintiff could sit/stand/walk for an entire 8-hour workday. (T at 372).

Dr. Joseph Gaeta, a non-examining medical expert, reviewed the record and testified at the second administrative hearing. Dr. Gaeta opined that, while Plaintiff had significant heart disease during the period at issue, the condition was effectively well-managed at that time. (T at 1106). Dr. Gaeta believed Plaintiff would have been able to perform light work. (T at 1107-1108).

The ALJ reasonably relied on these medical opinions when deciding not to afford full weight to Dr. Karimi's assessment. (T at 1090-91). *See Pena*, 2013 WL 1210932, at *15 (noting that where "the treating physician issued opinions that [were] not consistent with other substantial evidence in the record, such as the opinion of other medical experts, the treating physician's opinion is not afforded controlling weight") (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)) (internal quotation marks omitted) (alteration in original); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)("[T]he less consistent [the treating physician's] opinion is with the record as a whole, the less weight it will be given.").[4]

For the reasons stated above, this Court finds that the ALJ's decision to discount the treating physician's assessment must be sustained under the deferential standard of review applicable here.

B.    Credibility

A claimant's subjective complaints of pain and limitation are "an important element in the adjudication of [social security] claims, and must be thoroughly considered in calculating the [RFC] of a claimant." *Meadors*

---

[4] Plaintiff faults the ALJ for failing to weigh evidence provided by his treating cardiologist, Dr. Edward Brown.  However, the record does not contain an assessment of work-related limitations from Dr. Brown.  Rather, the record contains letters from Dr. Brown, which pre-date the alleged disability onset date by several years, and which contain the results of cardiac testing. (T at 293-99).  The Court finds no error as to this aspect of the ALJ's decision.

*v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929.

However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id*. (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec*., 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's credibility.  First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id*. (citation, alterations,

and quotation marks omitted). The ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 184.

This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's credibility, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by

substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280

(S.D.N.Y. 2010)(alterations in original, citations omitted).

In the present case, Plaintiff testified as follows: since 2010 or 2012,

he has been unable to "stay on [his] feet for too long." (T at 1164-65). His

job as a security guard required him to remain standing for up to 8 hours

and would not have allowed him to attend up to 4 doctor's appointments

each week. (T at 1164). He could not carry a gallon of milk or perform other

activities "detrimental to [his] wellbeing" unless he "had to." (T at 1166-67).

Plaintiff was unable to climb the full six flights of stairs up to his

apartment when the building's elevator was inoperable, or the final flight of

stairs up to his apartment from where the elevator ended on the fifth floor,

without taking breaks between floors. (T at 1110-13).

The ALJ found that Plaintiff's medically determinable impairments

could reasonably be expected to cause the alleged symptoms, but

concluded that his statements concerning the intensity, persistence, and

limiting effects of those symptoms were not fully credible. (T at 1088).

For the following reasons, the Court finds the ALJ's decision to

discount Plaintiff's credibility supported by substantial evidence and

consistent with applicable law.

First, the ALJ found Plaintiff's complaints of disabling pain and limitation not fully consistent with the treatment record, which, as discussed above, the ALJ reasonably read as documenting generally unremarkable clinical findings and solid symptom management during the relevant time period.  (T at 1088-90).

An ALJ has the discretion to discount a claimant's subjective complaints where, as here, those complaints can be considered inconsistent with the overall clinical assessments and treatment notes. *See Kuchenmeister v. Berryhill*, No. 16 Civ. 7975, 2018 U.S. Dist. LEXIS 9750, at *59 (S.D.N.Y. Jan. 19, 2018); *Rodriguez v. Colvin*, No. 15 Civ 6350, 2016 U.S. Dist. LEXIS 159003, at *68-69 (S.D.N.Y. Nov. 14, 2016); *Robles v. Colvin*, No. 16CV1557 (KMK) (LMS), 2019 U.S. Dist. LEXIS 62118, at *51 (S.D.N.Y. Apr. 9, 2019).

Second, the ALJ found Plaintiff's complaints of disabling pain and limitation inconsistent with the well-supported medical opinion evidence, including the opinions of Dr. Gaeta, Dr. Ravi, and Dr. Meisel, all of whom assessed exertional limitations generally consistent with those set forth in the ALJ's RFC determination. (T at 1090-91).

The ALJ reasonably found these opinions supported by the record evidence and inconsistent with Plaintiff's subjective complaints of disabling

pain and limitation. (T at 17-18).  *See McLaughlin v. Sec'y of Health, Educ. & Welfare,* 612 F.2d 701, 705 (2d Cir. 1980) (The "ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.")*; DeJesus v. Colvin,* 12 Civ. 7354, 2014 U.S. Dist. LEXIS 22238, at *63 (S.D.N.Y. Jan. 23, 2014) ("[T]he ALJ properly chose to give little weight to [claimant's] unsupported complaints and claims given that he analyzed them in light of the objective medical evidence in the record."); *see also Penfield v. Colvin,* 563 F. App'x 839, 840 (2d Cir. 2014).

Lastly, the ALJ found Plaintiff's activities of daily living during the relevant time period inconsistent with his complaints of disabling pain and limitation.  (T at 1087-90).  In particular during the period at issue, Plaintiff repeatedly reported that he could walk at least 10 blocks and climb several flights of stairs. (T at 367, 768, 1469, 1481, 1488).  Plaintiff was also able to travel out of the country in 2020 for approximately 6 weeks, which the ALJ found was evidence of good symptom management. (T at 1167-68).

Although ALJs must be careful not to overinterpret a claimant's ability to perform limited tasks as evidence of the ability to maintain full-time, competitive, remunerative work, the regulations expressly permit

consideration of the claimant's "daily activities" when assessing credibility. *See* 20 C.F.R. § 404.1529(c)(3)(i). A claimant's "normal range of activities" may be relied upon as evidence that the claimant "retains a greater functional capacity than alleged." *Smoker v. Saul*, No. 19-CV-1539 (AT) (JLC), 2020 U.S. Dist. LEXIS 80836, at *53 (S.D.N.Y. May 7, 2020)(citation omitted); *see also Rutkowski v. Astrue*, 368 Fed. App'x 226, 230 (2d Cir. 2010)(affirming ALJ's credibility determination in light of "substantial evidence … showing that [claimant] was relatively 'mobile and functional,' and that … allegations of disability contradicted the broader evidence"); *Ashby v. Astrue*, No. 11 Civ. 02010, 2012 U.S. Dist. LEXIS 89135, at *43-44 (S.D.N.Y. Mar. 27, 2012)("As it appears that, in making his credibility assessment, the ALJ appropriately considered Plaintiff's ability to engage in certain daily activities as one factor, among others suggested by the regulations, this Court finds no legal error in this aspect of the ALJ's analysis.").

There is no question that Plaintiff suffered from pain and limitation. The ALJ did not dismiss Plaintiff's subjective complaints and, instead, found him limited to a reduced range of light work during the relevant time period. (T at 1087).  However, "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir.

1983). "Otherwise, eligibility for disability benefits would take on new meaning." *Id.*

Here, the ALJ offered specific support for the decision to discount Plaintiff's subjective complaints, including a reasonable reading of the treatment notes and clinical assessments, an appropriate reconciliation of the medical opinion evidence, and proper consideration of the activities of daily living.  This is sufficient to sustain this aspect of the ALJ's decision under the deferential standard of review applicable here.  *See Stanton v. Astrue,* 370 Fed App'x 231, 234 (2d Cir. 2010)(stating that courts will not "second-guess the credibility finding . . . where the ALJ identified specific record-based reasons for his ruling"); *Hilliard v. Colvin*, No. 13 Civ. 1942, 2013 U.S. Dist. LEXIS 156653, at *48 (S.D.N.Y. Oct. 31, 2013)(finding that ALJ "met his burden in finding [subjective] claims not entirely credible because [claimant] remains functional in terms of activities of daily living and the objective medical evidence fails to support her claims of total disability based on pain").

## C.    Past Relevant Work

At step four of the sequential evaluation, a "claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d

182, 185 (2d Cir. 2003)(citing SSR 82-62"). The "inquiry requires separate

evaluations of the previous job and the job as it is generally performed." *Id*.

"The inquiry ... is not whether the claimant is able to perform the duties of

her previous job, but whether the claimant is able to perform the duties

associated with her previous 'type' of work." *Halloran v. Barnhart*, 362 F.3d

28, 33 (2d Cir. 2004)(quoting *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir.

1981)).

Here, the ALJ found that Plaintiff retained the RFC to perform his past

relevant work as a security guard during the relevant time period. (T at

1091).  This conclusion was based on the testimony of Jerome Volstra, a

vocational expert, who opined that a hypothetical claimant capable of light

work, but limited to occasional stooping, bending, and crouching, with no

crawling, could perform the occupation of security guard as it is generally

performed. (T at 1154-55).

Plaintiff raises two challenges to this aspect of the ALJ's decision.

First, he argues that the ALJ should have given more weight to Dr.

Karimi's opinion and incorporated more exertional limitations into the

hypothetical RFC presented to the vocational expert. This argument is a

restatement of Plaintiff's other challenges to the ALJ's assessment of the

medical opinion evidence and is unavailing for the reasons outlined above.

*See Wavercak v. Astrue*, 420 F. App'x 91, 95 (2d Cir. 2011)("Because we have already concluded that substantial record evidence supports the RFC finding, we necessarily reject Wavercak's vocational expert challenge.").

Second, Plaintiff contends that the ALJ failed to address an important limitation, namely his ability to respond to a stressful/strenuous situation during the performance of his duties as a security guard.

The Court finds a remand necessary with respect to this aspect of the ALJ's decision.

Dr. Meisel recommended that Plaintiff avoid activities that are "mildly to moderately strenuous." (T at 370).  In a second consultative examination performed in August of 2020, very shortly after the end of the closed period at issue, Dr. Ravi opined that Plaintiff avoid activities requiring "mild or greater exertion due to [his] cardiac condition." (T at 1584).  Dr. Gaeta characterized Plaintiff's cardiac functioning during the relevant period as "diminished" and described his heart disease as "significant." (T at 1105-06).

The ALJ recognized Plaintiff's history of congestive heart failure as a severe impairment, along with documented serious issues, including a heart attack. (T at 1086, 1088-90).

During his testimony, the vocational expert referenced and relied upon the DOT description for security guard. (T at 1154).[5]

The DOT description provides that, among other duties, a security guard may "sound[] [an] alarm or call[ ] police or fire department by telephone in case of fire or presence of unauthorized persons," "arrest trespassers," and "apprehend[ ] or expel [ ] miscreants." *See* DOT 372.667-034.

The ALJ incorrectly limited his consideration of the question of Plaintiff's ability to engage in strenuous activity solely in the context of performing and sustaining physical exertion such as walking or standing.

The written decision, however, does not reflect that the ALJ considered the impact of Plaintiff's cardiac condition on his ability to respond to an acutely stressful and strenuous situation, as could be presented during the course of employment as a security guard. *See Ferraris v. Heckle*r, 728 F.2d 582, 587 (2d Cir. 1984) (noting that "the crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by

---

[5] The Social Security Administration has taken administrative notice of the Dictionary of Occupational Titles ("DOT"), which is published by the Department of Labor and provides detailed descriptions of the requirements for a variety of jobs. See 20 CFR § 416.966 (d)(1).

substantial evidence"); *Almodovar v. Berryhill*, No. 17-CV-8902 (BCM), 2019 U.S. Dist. LEXIS 48612, at *18 (S.D.N.Y. Mar. 22, 2019)(noting that remand is required where the ALJ failed to provide an "adequate 'roadmap' for his reasoning").

This omission is important because such stresses/situations are unlikely to present themselves in the ordinary course of a claimant's daily life, making the generally normal clinical findings and activities of daily living less relevant than, for example, the consultative examiners' conclusion that Plaintiff should avoid strain and exertion due to his cardiac condition.[6]

Further, because of this omission the vocational expert was not asked whether a claimant limited in his or her ability to tolerate sudden exertion and stress could perform the position of security guard as it is generally performed.  This shortcoming undermines the ALJ's conclusion at step four that Plaintiff could perform his past relevant work during the time period at issue.  A remand is required for proper consideration of these issues.

---

[6] By way of example, the ALJ can (and did) cite Plaintiff's ability to take an extended vacation in St. Kitts as evidence of the capacity to sit for prolonged periods; but this does not speak to Plaintiff's ability to apprehend "miscreants," which is identified by the DOT as part of the past relevant work.

### D.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

For the reasons discussed above, the Court finds a remand is required to determine whether Plaintiff could perform his past relevant work during the closed period of disability and, if not, whether he is otherwise entitled to benefits under the Social Security Act with respect to that period.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and this matter is REMANDED under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this

Decision and Order. The Clerk is directed to enter final judgment and then close the file.

Dated: January 25, 2024          *s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge